USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/14/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

DENNIS FAGAN,

Plaintiff,

7:25-cv-00927-VR

**OPINION & ORDER**

-against-

MOUNT VERNON CITY SCHOOL DISTRICT, et al.

Defendants.

---------------------------------------------------------------X

**VICTORIA REZNIK, United States Magistrate Judge:**

## I. INTRODUCTION

Before the Court is Plaintiff Dennis Fagan's motion for leave to amend his complaint under Rule 15(a)(2) of the Federal Rules of Civil Procedure. (ECF No. 39).[1] The proposed amendments seek to remedy claims that did not survive Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). For the reasons that follow, Plaintiff's amendments are GRANTED in part and DENIED in part.

[1] All page numbers to documents filed on ECF refer to ECF pagination, printed in blue on the top of each page.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed the original complaint on January 31, 2025, alleging racial discrimination, retaliation, and hostile work environment claims against his former employer, Mount Vernon City School District (the "District") and four of its employees (altogether, "Defendants") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the New York State Human Rights Law, N.Y. Exec. Law § 296 (the "NYSHRL"). (ECF No. 1).

On March 27, 2026, the Court granted in part and denied in part Defendants' motion to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 36). Specifically, the Court dismissed Plaintiff's hostile work environment claims under Title VII against the School District (Count 3), discrimination and retaliation claims under Section 1983 against Defendants Beverly Jones, Pauline Pierce, and Lynne Middleton (all individual Defendants excluding Defendant K. Veronica Smith) (Count 7), and all claims under NYSHRL for discrimination, retaliation, and hostile work environment (Counts 4–6). The Court allowed Plaintiff to file an amended complaint within 30 days of the Opinion and Order's entry. (*Id.* at 48). On April 19, 2026, Plaintiff filed a motion for leave to amend the complaint, which attached a Proposed Amended Complaint. (ECF No. 39-2).

**B. Proposed Amended Complaint**

The proposed amended complaint differs from the original complaint in that Plaintiff (1) moves to serve a late notice of claim *nunc pro tunc* regarding his NYSHRL claims (*id.* ¶ 10), (2) adds details and claims relevant to all individual Defendants (*id.* ¶¶ 81-84), and (3) recites the elements of the claims at issue (*id.* ¶¶ 70, 85-100).

## III. LEGAL STANDARD

The standard for amending pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. A plaintiff may freely amend his or her complaint within twenty-one days after service of process, or twenty-one days after service of a responsive pleading or motion under Rule 12(b). After that, a party may amend his or her pleading with leave of the court, which should be given freely when justice so requires. *See* Fed. R. Civ. P. 15(a)(2).

A proposed amendment is futile if it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *Panther Partners Inc. v. Ikanos Communs., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Thus, if the amendments provide "enough facts to state a claim to relief that is plausible on its face," the Court will grant the motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making its determination, the Court will accept all factual allegations as true and construe reasonable inferences in the claimant's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not "accept as true a legal conclusion couched as a factual

allegation," or legitimize "[t]hreadbare recitals of the elements of a cause of action." *Id.* Rather, the claimant must provide enough facts which plausibly suggest the existence of each essential element of the claim. *Twombly*, 550 U.S. at 562-63. The critical inquiry is whether the "factual content" pled within the amended complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

At issue are Plaintiff's hostile work environment claims under Title VII against the District (Count 3); discrimination and retaliation claims under Section 1983 against Defendants Beverly Jones, Pauline Pierce, and Lynne Middleton (Count 7); and all claims for discrimination, retaliation, and hostile work environment under NYSHRL (Counts 4–6). The Court will not address Plaintiff's discrimination and retaliation claims under Title VII (Counts 1–2) or under Section 1983 against Defendant K. Veronica Smith, as the Court has already ruled that they state valid claims. (ECF No. 36).

The Court will analyze Plaintiff's hostile work environment claims under Title VII, followed by Plaintiff's discrimination and retaliation claims under Section 1983 against Defendants Jones, Pierce, and Middleton. The Court will then address the NYSHRL claims.

### A. Plaintiff's proposed amendments to the hostile work environment claim under Title VII are futile.

Plaintiff's proposed amendments to remedy the deficiencies in his hostile work environment claim under Title VII are futile because they would not survive a Rule 12(b)(6) motion to dismiss. The amendments add no facts to show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Instead, they largely repeat and repackage the allegations the Court has already considered, including "repeated interrogations, laughter at Plaintiff's complaints, exclusion from meetings, the 'Donald Trump' and 'racist?' comments, the Barnes racial slur, and Raimondi's explicit statement that Plaintiff would not win 'because of his race.'" (ECF No. 39-2 ¶ 87). The Court has already determined that each of those allegations, whether considered separately or together, do not plausibly show conduct severe or pervasive enough to alter Plaintiff's employment conditions and create an abusive working environment. (ECF No. 36); *see Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015). The remaining proposed amendments merely recite the elements of a hostile work environment claim. (*See* ECF No. 39-2 ¶¶ 88, 98).

Plaintiff's only proposed amendment adding purported factual content is the allegation that the same conduct occurred "repeatedly and frequently from Fall 2022 through October 2023." (ECF No. 39-2 ¶ 87). But describing previously alleged conduct as "repeated" and "frequent" does not cure the claim's deficiency. Those are

conclusory characterizations, not new facts showing how often the conduct occurred, when it occurred, or whether it was severe enough to alter the conditions of Plaintiff's employment.

Nor do duration and frequency, standing alone, establish a hostile work environment. *See Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05 CIV. 5109 (JCF), 2007 WL 1149979, at *1-*5, *17 (S.D.N.Y. Apr. 18, 2007), *aff'd sub nom. Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943 (2d Cir. 2008) (holding supervisor's "occasional use of sexist language" over three-year period, together with intense scrutiny of plaintiff, use of a loud and intimidating voice, and slamming of furniture were insufficient to create a hostile work environment). Rather, the court must consider "all the circumstances," of which frequency and duration are only part, in addition to "[the discriminatory conduct's] severity; whether it was physically threatening or humiliating," and "whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The Court has already explained why Plaintiff's allegations, viewed in their totality, fail to state a claim for hostile work environment. (*See* ECF No. 36 at 31-33). The proposed amendments do not change that conclusion.

Plaintiff argues that his allegations are analogous to *Banks v. General Motors*, 81 F.4th 242, 252 (2d Cir. 2023), where the Second Circuit vacated summary judgment dismissing the hostile work environment claim. But *Banks* involved conduct far more severe and pervasive than that alleged here. There, a manager "shook a thick, rolled-up document threateningly in [plaintiff's] face and

…yell[ed] at her in a loud and aggressive manner," *id.* at 263; "Black employees found nooses placed deliberately at their workstations on three separate occassions"; and racial and sexual slurs were repeatedly directed at the plaintiff and other Black employees over a ten-year period, *id.* at 253-254, 265. As the Second Circuit explained, "[f]rom 2006 to 2016, Banks and other Black employees saw nooses, Confederate flags, and other racially offensive material around the plant, including a Black test dummy seated on a vehicle wearing minimal and tattered clothes." *Id.* at 265. And "several colleagues testified to being called 'n****r' and 'silverback' and having their work deemed 'n****rized.'" *Id.*

Plaintiff's allegations bear little resemblance to that sustained pattern of abuse. His claim rests instead on a few "mild, isolated incident[s]" of racial enmity, not "a steady barrage of racial insult and epithet." *Id.* at 264-265 (citations omitted); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (explaining that "[i]nstead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments" to constitute hostile work environment (citation omitted)); *see, e.g., Garcia v. NYC Health & Hosp. Corp.*, No. 19 Civ. 997 (PAE), 2019 WL 6878729, at *7 (S.D.N.Y. Dec. 17, 2019) (holding that plaintiff failed to state a claim for a hostile work environment where his supervisor repeatedly berated him, publicly questioned him about his disability, and multiple employees referred to him using slurs related to his sexual orientation).

Plaintiff's hostile work environment claim comes closer to the allegations in *Chislett v. New York City Dep't of Educ.*, 157 F.4th 172, 179 (2d Cir. 2025), but

remains distinguishable. As here, the plaintiff in *Chislett* alleged that supervisors disregarded her complaints about racially charged comments made by her subordinates. *Id.* But the alleged hostility there was more direct, sustained, and pervasive. When Chislett objected to race-based comments, for example, "she was 'accused' of being 'white and fragile.'" *Id.* Chislett also alleged that she was required to attend monthly meetings and implicit bias trainings that she described as "divisive" and as having "stereotyped Caucasians." *Id.* at 180, 182. At these trainings, speakers stated that "white culture's values" were "homogenous and supremacist," and "instructors told Chislett that her 'interest in excellence was perfectionism and consistent with white supremacy.'" *Id*. at 180. When she objected to participating in lineups and small group discussions to illustrate employees' racial privilege, she was told she was "'a horrible person' who 'did not deserve to be working with children in New York City,'" and that her discomfort meant that "children's lives would be at stake." *Id.* Other Caucasian employees likewise perceived the work environment as uncomfortable and hostile. *Id.* at 181.

The allegations in this case are fewer and more attenuated. To be sure, some comments directed at Plaintiff were racial in nature – including, for example, the question "are you racist?" and a subordinate once saying to Plaintiff "f*** you white mother f*r." (ECF No. 39-2 ¶¶ 65, 87). But they do not approach the severity or pervasiveness of the conduct alleged in *Chislett*. *See, e.g., Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 561(2d Cir. 2022) (allegations that one is racist together with

"excessive criticism and rudeness do not constitute a hostile work environment" (citation omitted)).

Because Plaintiff failed to amend the complaint with additional factual allegations of a hostile work environment, he did not plausibly allege such a claim. For this reason, Plaintiff's motion to amend his hostile work environment claim under Title VII is DENIED.

**B. Plaintiff's proposed amendments to discrimination and retaliation claims under Section 1983 against Defendants Jones, Pierce, and Middleton survive.**

Plaintiff's proposed amendments to the termination and retaliation claims under Section 1983 would survive a motion to dismiss under Rule 12(b)(6). The amendments cure the deficiencies in his original complaint, which lacked allegations specific to the personal involvement of Defendants Jones, Pierce, and Middleton in Plaintiff's termination.

To prevail on a Section 1983 claim, Plaintiff must show "(a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (quoting Section 1983). The Court has already decided that the individual Defendants acted under color of law, and that Plaintiff adequately pleaded discrimination and retaliation under Title VII. (ECF No. 36 at 35, 38). The only remaining question is whether the proposed amendments adequately allege each individual Defendant's personal

involvement in the alleged discrimination and retaliation. To plead personal involvement, Plaintiff must offer "allegations which plausibly link the individual defendants to [the discriminatory] acts." *Falcon v. City University of New York*, No. 15-cv-3421 (ADS)(ARL), 2016 WL 3920223, at *12 (E.D.N.Y. July 15, 2016). The proposed amendments must show that each Defendant acted in a "direct" and "intentional" manner that contributed to Plaintiff's constitutional deprivation. *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005) (internal quotation marks and citations omitted).

Under this standard, Plaintiff plausibly alleges that Defendant Jones personally participated in the decision to terminate his employment. Plaintiff alleges that Jones, in her individual capacity, "recommended or approved" of his termination to K. Veronica Smith, the ultimate decision maker, in retaliation for his disciplining of black officers, and she disregarded his complaints about those officers and compared him to Donald Trump. (ECF No. 39-2 ¶¶ 81-82). These allegations adequately plead Jones' personal involvement in the alleged discrimination and retaliation. *See Vega v. Hempstead Union Free School Dist.,* 801 F. 3d 72, 89 (2d Cir. 2015) (stating that where a complaint alleges that defendants had input into termination decisions, plaintiff has stated a claim under Section 1983); *see also Littlejohn*, 795 F.3d at 314 (holding that only the defendants whom the plaintiff specifically claimed had personal involvement in the termination decision could be held liable for discrimination under Section 1983).

Plaintiff also plausibly alleges that Defendant Pierce personally participated in the decision to terminate his employment. Plaintiff alleges that Pierce "personally participated in and influenced the decision to terminate Plaintiff," in response to Plaintiff's discipline of Rick Anderson, with whom Pierce was "very good friends." (ECF No. 39-2 ¶ 83). Plaintiff also alleges that Pierce "previously interrogated and laughed at Plaintiff regarding [his] write-ups of Anderson," "marginalized Plaintiff by excluding him from meetings," and "advocated for Plaintiff's firing to protect Anderson and the other Black officers Plaintiff had disciplined." *Id.* These allegations sufficiently plead Pierce's personal involvement under Section 1983. *See Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 169 (E.D.N.Y. 2005) (finding that plaintiff stated a claim under Section 1983 where defendants were personally involved in the termination decision).

Although a closer call, Plaintiff also sufficiently pleads Middleton's personal involvement in his termination as well. Plaintiff alleges that "[a]fter calling Plaintiff and accusing him of being racist," Middleton, "who had family connections to the officers Plaintiff disciplined (Anderson, Gardner, and/or Barnes), used her position as a Board of Education member to influence and push for Plaintiff's termination." (ECF No. 39-2 ¶ 84). Defendants argue that Plaintiff fails to plead either Middleton's discriminatory animus or sufficient facts showing how she used her position on the Board to bring about Plaintiff's termination. (ECF No. 42 at 11, 13 (citing cases referring to plaintiff's failure to articulate facts regarding the personal actions of each board member)). But Plaintiff need not plead the mechanics of

Middleton's influence in such detail. He need only allege facts plausibly showing that she "acted with an improper motive and played a meaningful role in the decision making process." *See Span v. Enlarged City Sch. Dist. Of Troy*, No. 12-CV-0975, 2012 WL 3886177, at *2 (N.D.N.Y. Sept. 6, 2012) (internal quotation marks and citations omitted).

Plaintiff has done so. He alleges that Middleton (1) accused him of being racist in connection with his efforts to discipline Black security officers Barnes, Gardner, and Anderson, with whom Middleton had close personal relationships (ECF No. 39-2 ¶¶ 64, 84), and (2) used her position as a Board member to influence and push for Defendant Smith to terminate him. (ECF No. 39-2 at ¶¶ 81, 84). Plaintiff further alleges that, just days before his termination, he was warned "to leave Barnes and Gardner alone because they had family members who were very close" to Middleton. (*Id.* ¶ 67) (ECF No. 39-2 ¶¶ 64, 67, 84). Taken together, these allegations provide just enough to "*indirectly* show discrimination by giving rise to a plausible inference of discrimination," *Buon v. Spindler*, 65 F.4th 64, 83 (2d. Cir. 2023) (emphasis in original), and to plausibly show that Middleton acted with an "improper motive" and played a meaningful role in the decision-making process. *See Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 422 (N.D.N.Y. 2005) (explaining that defendant need not be the sole decision maker responsible for plaintiff's termination); *see also Tyson v. Town of Ramapo*, No. 17-cv-4990 (KMK), 2019 WL 1331913, at *11 (S.D.N.Y. Mar. 25, 2019) (plaintiff need only allege facts that "give plausible support to a minimal inference of discriminatory motivation" (quoting

*Littlejohn*, 795 F.3d at 311)); *but see Stevens v. New York*, 691 F. Supp. 2d 392, 401 (S.D.N.Y. 2009) (holding that an allegation that defendants "'must have' approved any disciplinary actions" because of their superior positions was "conclusory" and "not sufficient" to state a claim).

Defendants also rely on cases involving "impermissible group pleading," in which a plaintiff seeks to impose individual liability based on allegations attributable to a group of people. *Pierro v. Hudson City Sch. Dist.*, No. 1:22-cv-670 (GLS/CFH), 2023 WL 2742245, at *6 (N.D.N.Y. Mar 31, 2023). Those cases do not apply to Middleton because Plaintiff alleges conduct specific to her. He alleges that Middleton personally contacted Plaintiff before his termination to accuse him of being racist, had personal ties to those Black security officers that Plaintiff disciplined, and then used her influence to push for Plaintiff's termination just a few weeks later. (ECF No. 39-2 ¶¶ 64, 67, 84).

Plaintiff's allegations sufficiently show each individual Defendant's personal involvement. Thus, the motion to amend the Section 1983 claims against Defendants Jones, Pierce and Middleton is GRANTED.

### C. Plaintiff's request to serve a late notice of claim is denied, so that he cannot revive his NYSHRL claims.

Plaintiff petitions the Court to serve a late notice of claim *nunc pro tunc*. As the Court has explained, this Court lacks authority to grant a request made after the one-year statute of limitations under Section 3813 expired. (ECF No. 36 at 42-43). Under N.Y. Educ. L. § 3813(2–b), Plaintiff has a one-year statute of limitations

to sue the School District and its officers, which began to run on the date of his termination, the latest adverse employment action resulting in ascertainable damages. *See Williams v. New York City Dep't of Educ.*, No. 19 CIV. 1353 (CM), 2019 WL 4393546, at *19 (S.D.N.Y. Aug. 28, 2019) ("Discrimination claims under the NYSHRL and NYCHRL accrue under Section 3813 when an employer takes an adverse employment action that results in readily ascertainable damages." (citations omitted)). Plaintiff alleges that he was terminated on October 23, 2023, (ECF No. 39-2 at ¶ 79), so his one-year statute of limitations expired on October 23, 2024. But Plaintiff did not request leave to serve a late notice under Section 3813 until almost ten months later, on August 8, 2024. (ECF No. 29-3 ¶ 8).

Plaintiff argues that this Court should nevertheless grant him leave to serve late notice because the District "had actual knowledge" of his complaint and has suffered no prejudice. (ECF No. 34 at 15). But this Court has no discretion to do so. A court may extend the time to serve a notice of claim made after the three-month deadline under Section 3813(1), but "[t]he extension shall not exceed the time limited for the commencement of an action by the claimant against any district or any such school." *Ximines v. George Wingate High Sch.*, No. 05 CV 1214 (ILG), 2006 WL 2086483, at *10 (E.D.N.Y. July 25, 2006), *aff'd in part, vacated in part on other grounds, remanded*, 516 F.3d 156 (2d Cir. 2008) (citing N.Y. Educ. L. § 3813(2–a)). Thus, "according to the statute, a late notice of claim must be filed no later than one year after a cause of action accrues." *Matter of Amorosi v. South Colonie Ind. Cent. School Dist.*, 9 N.Y.3d 367, 371 (2007). "This statutory limitation to the Court's

power to extend the time to serve notice of claim divests the court of authority to grant an extension after the statute of limitations for the claim expires." *Ximines*, 2006 WL 2086483, at *10 (citations omitted); *see also Munro v. Ossining Union Free School Dist.*, 866 N.Y.S.2d 687, 698 (2d Dep't 2008) (noting that a claimant "may seek permission to serve a late notice of claim under Education Law § 3813(2-a) but only "if the one-year statute of limitations applicable to such actions has not run" (internal citation omitted)); *Newman v. Leroy Cent. School Dist.*, No. 07-cv-6299, 2008 WL 974699, at *6-7 (W.D.N.Y. April 8, 2008) (finding court lacked authority to grant plaintiff extension of time to serve notice of claim beyond expiration of one-year statute of limitations); *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (failure to comply with notice requirements "ordinarily requires a dismissal for failure to state a cause of action").

For this reason, Plaintiff's reliance on *Matter of Newcomb v. Middle Country Cent. Sch. Dist.*, 28 N.Y.3d 455 (2016), is misplaced. In that case, plaintiff served a notice of claim on the School District "five months after the 90-day statutory period for serving a notice of claim had expired" and "simultaneously filed an order to show cause for leave to serve a late notice of claim." *Id.* at 462. That notice was untimely under the 90-day rule but—unlike this case—was not served after expiration of the statute of limitations. The Court of Appeals thus analyzed whether the lower court, in its discretion, properly considered factors such as actual knowledge and substantial prejudice to determine whether to grant leave to file a late notice. *Id.* at 463-468.

The other cases Plaintiff tries to distinguish are unhelpful to his cause. In *Munro*, the court made clear that a claimant may seek permission to serve a late notice of claim under Section 3813 (2a), but only "[i]f the one-year statute of limitations applicable to such actions has not run." *Munro*, 866 N.Y.S.2d at 698. Similarly, in *Newman*, the court found that it lacked authority to grant plaintiff's extension of time to serve a late notice of claim beyond expiration of the one-year statute of limitations. *Newman*, 2008 WL 974699, at *6-7. The same conclusion is warranted here.

For these reasons, Plaintiff's motion to amend his NYSHRL claims is DENIED.

## V. CONCLUSION

For the reasons above, Plaintiff's motion to amend is **GRANTED** with respect to Plaintiff's discrimination and retaliation claims under Section 1983 against Defendants Beverly Jones, Pauline Pierce, and Lynne Middleton (Count 7), but **DENIED** as to his hostile work environment claim under Title VII, and all NYSHRL claims.

Plaintiff shall file a second Amended Complaint that excludes allegations relating to (1) hostile work environment claims under Title VII, and (2) all NYSHRL claims against all Defendants. Plaintiff shall do so within **30 days** of this Opinion and Order. Defendants shall file an answer **within 14 days thereafter**.

The Clerk of the Court is respectfully directed to close the gavels associated with ECF Nos. 38 and 39.

**SO ORDERED.**

DATED: White Plains, New York
August 14, 2026

VICTORIA REZNIK
United States Magistrate Judge